IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| JULIO ARJONA GOMEZ,<br>Institutional ID No. 67176-004,<br><br>Plaintiff,<br><br>v.<br><br>MTC/GILES W. DALBY<br>CORRECTIONAL FACILITY, *et al.*,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§ CIVIL ACTION NO. 5:21-CV-025-BQ<br>§<br>§<br>§<br>§<br>§<br>§ |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Proceeding pro se, Julio Arjona Gomez filed this action as a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging an immigration detainer and alleging violations of his constitutional rights during his incarceration at the Giles W. Dalby Correctional Facility (Dalby Unit), a private correctional facility operated by Management & Training Corporation (MTC) pursuant to a contract with the Federal Bureau of Prisons (BOP).[1] ECF No. 1. The United States District Judge severed Gomez's original complaint into two separate actions: (1) a habeas petition challenging his immigration detainer and the fact of his detention in Dalby Unit; and (2) a civil-rights action challenging the conditions of his confinement. ECF No. 2.

Gomez filed an Amended Complaint in this civil-rights action on March 11, 2021 (ECF No. 6), and on March 26, 2021, the district judge transferred this case to the undersigned United States Magistrate Judge. ECF No. 10. The undersigned thereafter reviewed Gomez's Amended Complaint and authenticated records before ordering Gomez to complete a questionnaire in

---

[1] *See* Mgmt. & Training Corp., *Giles W. Dalby Correctional Facility*, https://www.mtctrains.com/facility/giles-w-dalby-correctional-facility (last visited Dec. 7, 2021).

accordance with *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976), which he timely completed and returned. ECF Nos. 12, 13, 14.

Not all parties have consented to proceed before the undersigned magistrate judge. In accordance with the order of transfer, the undersigned makes the following findings, conclusions, and recommendations to the United States District Judge.

### I. Standard of Review

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2019); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical and

2

other prison records if they are adequately identified or authenticated" (internal quotation marks omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II. Discussion

### A. Gomez's Claims

In his Amended Complaint, Gomez names the following Defendants: (1) MTC and the Dalby Unit; (2) Martin Friend, Executive Director (Warden) of the Dalby Unit; (3) Lorenzo Lazcano, District Chief Counsel for Immigration and Customs Enforcement (ICE) and Department of Homeland Security (DHS);[2] (4) James Gowens, Unit Manager & Grievance Investigator at the Dalby Unit; (5) Michael Martinez, Counselor at the Dalby Unit; and (6) Courtney O'Neal, Case Manager at the Dalby Unit (collectively, Defendants). Am. Compl. 4–5, ECF No. 6.[3]

Gomez alleges eighteen claims against the named Defendants, including that one or more Defendants: (1) committed tax fraud; (2) failed to eliminate black mold at the Dalby Unit; (3) violated the Prison Rape Elimination Act (PREA); (4) filed false statements and/or fraudulent reports; (5) violated the Health Insurance Portability and Accountability Act (HIPAA); (6) allowed

---

[2] Gomez does not specify what Defendant Lazcano's official position is, but provides his place of employment as "DHS, Office District Chief Counsel U.S. ICE" within Dalby Unit. ECF No. 6, at 4. The Court recites Gomez's claims and defendants as he names them, without looking outside of the pleadings at this stage to determine their accuracy.

[3] Page citations to Gomez's pleadings refer to the electronic page number assigned by the Court's filing system.

3

"Unbalanced Grounds" with respect to distribution of inmates within BOP facilities based on ethnicity; (7) "abused" due process; (8) denied Gomez access to prison rehabilitation programs and the First Step Act; (9) engaged in discriminatory practices; (10) increased the risk of inmates contracting COVID-19; (11) allowed inmates to intimidate other inmates; (12) conspired to deprive Gomez of his rights; (13) violated internal policy; (14) did not satisfactorily respond to his grievances; (15) inadequately performed job duties and/or possessed no formal training; (16) denied Gomez's request for compassionate release; (17) committed mail fraud; and (18) unlawfully placed an immigration detainer on Gomez and/or are unlawfully holding Gomez at a privately contracted facility. Questionnaire 1, ECF No. 14 (asking Gomez if this list of claims accurately summarized his Amended Complaint, to which he replied "yes").

Gomez seeks five forms of relief related to these claims. Specifically, he asks the Court to (1) investigate the Dalby Unit, (2) initiate prosecution for racketeering, (3) reimburse "all inmates that ha[ve] paid Tax while house[d] at [the] Dalby" Unit, (4) bring criminal charges against "the executive heads . . . should any inmate(s) of the minority group(s) get assaulted as a result of this complain[t], and (5) "cancel the immigration detainer" placed on him. Am. Compl. 6, 10, 29; Questionnaire 7 ("I want to fix my detainer with an act in good faith."), 18 (requesting that the Court "cancel the immigration detainer"), 21 (asking Gomez if the foregoing list accurately summarized the relief sought in his Amended Complaint, to which he replied "yes"). Gomez does not identify any other form of relief that seeks, either in his Amended Complaint or questionnaire responses.

As to his first claim, Gomez alleges that inmates in the Dalby Unit are required to pay tax on commissary items, even though he believes such a tax is prohibited by BOP rules. Am. Compl. 8; Questionnaire 2. Gomez alleges that he is harmed by the commissary tax because his family

4

sends him money, which is already "charged" when it enters his account. Questionnaire 2. As relief, Gomez seeks reimbursement of all commissary sales tax he and other inmates have paid while in the Dalby Unit. Am. Compl. 10; Questionnaire 21.[4]

Per his second claim, Gomez contends that the Dalby Unit has "black mold in the kitchen cups, and the dinning [sic] area" as well as in the walls of his cell, which has caused Gomez "respiratory problems," nose bleeds, and a rash in his eyes. Questionnaire 2; Am. Compl. 8–9. Gomez does not request specific relief in connection with these alleged injuries. *See* Am. Compl. 8–9; Questionnaire 2.

Gomez avers in his third claim that inmates at the Dalby Unit are required to "shower in the middle of the unit without any dividers" and are thereby "exposed to other inmates and staff that enjoy the show of inmate nudity" in violation of PREA. Am. Compl. 9. Gomez alleges that showering in the open has harmed his mental health but does not specifically request relief for the alleged harm. *Id.*

In his fourth claim, Gomez avers one or more Defendants have made false statements or filed false reports. First, Gomez alleges that "[t]he medical department here at MTC/[Dalby Unit]" is "rubber stamping" inmate medical records to avoid paying for proper medical care. Am. Compl. 9. Second, Gomez alleges that Defendants James Gowens and Courtney O'Neal have provided grievance responses that include statements Gomez believes to be false, such as the assertion that MTC and the Dalby Unit are not affiliated with ICE. Am. Compl. 18. Gomez does not request relief as to claim four. *See* Am. Compl. 9, 18; Questionnaire 4, 18.

---

[4] In the interest of efficiency and judicial economy, the Court does not describe or address every detailed assertion contained in Gomez's pleadings related to each claim. The Court need not do so because the claims asserted and relief sought require the disposition outlined below, regardless of sundry facts Gomez offers in support.

5

Gomez's fifth claim stems from his general allegation that multiple people review his medical requests before they reach medical staff, and non-medical staff members have unrestricted access to his medical records in violation of HIPAA. Am. Compl. 10. Gomez, however, provides no specific facts supporting his assertion that non-medical staff and inmates review his medical claims, nor does he allege how he is harmed by such conduct. *See* Questionnaire 5; Am. Compl. 10. Gomez does not specify requested relief as to this claim. Am. Compl. 10; Questionnaire 5.

Gomez's sixth claim alleges that "DSCC"— an entity Gomez neither defines nor names as a Defendant—is responsible for transferring inmates within BOP facilities but does not adequately consider a facility's ethnic makeup before transferring in new inmates, resulting in "unbalanced grounds." Am. Compl. 10; *see* Questionnaire 6 (clarifying that he is referring to BOP). Gomez does not specifically request relief as to this claim. *Id.* Instead, Gomez broadly lists four of his requests for relief—including investigation and prosecution of "someone" for racketeering, reimbursement of commissary taxes, and initiation of criminal charges against MTC "executive heads"—after his recitation of claims one through six. Am. Compl. 10.

In his seventh claim, Gomez states that Defendants "abused" his right to due process in several ways, including labeling Gomez as a "deportable alien" and placing an immigration detainer on him without due process of law, which makes him ineligible for certain rehabilitation programs. Questionnaire 12. Gomez does not specify requested relief as to this claim. *Id.*

For his eighth, ninth, and sixteenth claims, Gomez alleges that in addition to rehabilitation programs, Defendant Friend "[d]enies all inmates their compassionate release" and any other rights to programs under the First Step Act by labeling inmates as "deportable"—a label Gomez believes is discriminatory—and placing immigration detainers on them. Am. Compl. 12–14; Questionnaire 8. He asserts harm in the form of violation of his "basic human rights," including placement of

6

the immigration detainer, but does not otherwise describe a specific injury or identify the relief requested. Questionnaire 21.

For his tenth claim, Gomez claims that Dalby Unit officials are increasing the risks associated with COVID-19 within the facility. Am. Compl. 13. First, Gomez alleges Defendant Friend denies inmates compassionate release despite them suffering from various illnesses, such as COVID-19, that Gomez believes would ordinarily justify release. *Id.* Second, Gomez contends that the Dalby Unit does not use the "yearly budget" sent to them by "the Government" to provide inmates personal protective equipment such as masks, hand sanitizer, soap, and cleaning supplies to ward off disease. *Id.* Third, Gomez alleges that MTC and the Dalby Unit "continue[] to transport Federal Prisoner[s] into the State of Texas to be housed at" the Dalby Unit, which increases the risk of infection to current prisoners and decreases the amount of social distancing possible. Am. Compl. 13. Gomez does not seek relief in the form of COVID-19 protective supplies or decreased inmate population, but instead focuses again on the denial of his compassionate release and the imposition of what he believes is an invalid immigration detainer. Questionnaire 10 ("I am harmed because [Defendant Friend] deny my due process of law, and deny my compassionate release due [to] COVID-19, imposing a detention upon of the inmate, which detainer not provide a legal basis for [sic all] . . . ."). Gomez does not otherwise request relief as to this claim.[5] *See* Am. Compl. 13–14, 20–21; Questionnaire 9–10.

---

[5] In the order severing this action from Gomez's original habeas petition, the district judge read Gomez's initial complaint as requesting the Court to order BOP and the Dalby Unit to: (1) reduce the Dalby Unit's inmate population by one-half; (2) provide to inmates for free the same quality masks available for sale; and (3) cease transferring prisoners into the Dalby Unit until the COVID-19 pandemic is over. ECF No. 2, at 1. The district judge then ordered Gomez to file an amended complaint, and warned Gomez that he "may not incorporate by reference, or otherwise, any portion of the complaint previously submitted," because the new form "must present his entire complaint . . . ." *Id.* at 3. Gomez otherwise complied with the district judge's order and chose not to re-allege the relief requested in his original complaint.

7

For his eleventh claim, Gomez alleges that Defendant Friend "has a gang organized by inmate representatives," and that if an inmate makes a request or a grievance through the prison's internal procedures, Defendant Friend orders his gang to "beat" the inmate who filed the request. Questionnaire 10; Am. Compl. 14. Gomez does not allege that he has ever been a victim of this purported gang activity. *See* Questionnaire 10. Gomez does not request relief on this claim. *See id.*

Gomez contends in his twelfth, thirteenth, and fourteenth claims that Defendants Friend and Gowens violate internal policy and fail to satisfactorily respond to his grievances in a conspiracy to deprive Gomez of his constitutional rights. Am. Compl. 13, 17–18, 20–21. First, Gomez alleges broadly that grievances "disappear" in violation of the Dalby Unit officials' "own rules." Questionnaire 4–5. Second, Gomez alleges that Defendant Friend does not personally respond to grievances, and that some of Gomez's grievances directed to Defendant Friend have gone unanswered. Am. Compl. 13. Third, Gomez alleges that Defendant Friend and Defendant Gowens, the Grievance Investigator, have conspired to make the grievance system so unsatisfactory that it "tire[s] the claimants so nothing ever gets rectified." Questionnaire 14–15. According to Gomez, this method of answering grievances violates his due process rights and causes him "irreparable injury" due to distance from his family, but he does not specify how this injury is caused by Defendants' grievance system. *Id.* at 14–15. Gomez does not request relief on this claim. *See id.* at 13–21.

In his fifteenth claim, Gomez alleges that Defendant Martinez, Dalby Unit Counselor, and Defendant O'Neal, Gomez's Case Manager, have inadequately performed their duties and lack formal training, resulting in Gomez being denied compassionate release and remaining in the Dalby Unit on an immigration detainer. Am. Compl. 19–21. As to his relief sought, Gomez

requests that this Court enter "an order to cancel the immigration detainer" placed on him. Questionnaire 18.

In his seventeenth claim, Gomez maintains that Defendant Lazcano, as District Chief Counsel for DHS and ICE, obstructed Gomez's legal correspondence and abused inmate legal procedures. Am. Compl. 15–16. Gomez contends that Defendant Lazcano's "obstruction" of mail violated his due process rights, causing "irreparable injury" to Gomez and his family members through "alienation of affection," because Defendant Lazcano prevented Gomez from challenging his immigration detainer. Questionnaire 12. Gomez does not specify any requested relief. *See id.*

For his eighteenth claim, Gomez alleges throughout his Amended Complaint that Defendants unlawfully placed an immigration detainer on him and are illegally holding him at a privately contracted facility. *See* Am. Compl. 7–8, 12–16, 19–20, 25–29; Questionnaire 11, 20–21. Gomez alleges that he has been "sequestered/kidnapped by a private company" because the Dalby Unit is contractually operated by MTC, rather than BOP directly. Am. Compl. 15; Questionnaire 11. Gomez states he is harmed by this violation because of the distance from his family, but does not specify how this harm flows from the Dalby Unit's status as a privately contracted facility, as opposed to its geographic location. *See id.* Concerning the detainer specifically, Gomez claims he was provided insufficient process and the detainer should be quashed. *Id.* at 21.

### B. The undersigned lacks jurisdiction to review Gomez's challenges to his immigration detainer in this civil-rights action.

The district judge previously severed Gomez's current action from his habeas request. ECF No. 2. The district judge only referred Gomez's civil-rights claims to the undersigned for review (ECF No. 10), thereby segregating to Gomez's habeas action any "[c]hallenges to the validity of [his] confinement or [the] particulars affecting its duration," which would necessarily include any

9

claim seeking release from the Dalby Unit. ECF No. 2, at 2 (internal quotation marks and citation omitted). Gomez formally requests only five forms of relief, one of which is removal of his immigration detainer.[6] Am. Compl. 4, 29; Questionnaire 18; *see* Questionnaire 21 (confirming Gomez only seeks five forms of relief).

To the extent that Gomez seeks removal of his immigration detainer or otherwise seeks release from custody, he must pursue such relief through a petition for a writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973); *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997) (providing that a habeas petition "is the proper vehicle to seek release from custody"); *Newman v. Reed*, No. 3:18-CV-2679-N-BH, 2019 WL 652963, at *1–2 (N.D. Tex. Jan. 10, 2019) (recommending dismissal of plaintiff's suit seeking dismissal of his state criminal case, explaining that because plaintiff could "only obtain declaratory or monetary relief in [a] § 1983 action . . . he . . . failed to state claim upon which relief may be granted"), *R. & R. adopted by* 2019 WL 652471 (N.D. Tex. Feb. 15, 2019). For these reasons, the undersigned recommends that the district judge dismiss Gomez's claims seeking removal of his immigration detainer or release from custody, without prejudice to Gomez's right to pursue those claims in his pending habeas action.

---

[6] While not formally seeking an order directing his release, Gomez does complain repeatedly about Defendants allegedly wrongfully denying his release, and he requests an order removing his immigration detainer, which he believes is the only reason he remains in the Dalby Unit. *See, e.g.*, Questionnaire 10 ("I am harmed because [Defendant Friend] deny my due process of law, and deny my compassionate release due [to] COVID-19, imposing a detention upon of the inmate, which detainer not provide a legal basis for [sic all] . . . ."), 18 (requesting that "this Honorable Court in the form of an order . . . cancel the immigration detainer that was originate[d] through the abuse of process"); Am. Compl. 19–21 (alleging in his fifteenth claim that Defendants have inadequately performed their duties and lack formal training, resulting in Gomez being denied compassionate release and remaining in the Dalby Unit on an immigration detainer).

10

### C. Because Gomez does not state a constitutional violation as to claim one—requesting reimbursement for taxes paid on commissary items—the undersigned recommends dismissal of that claim with prejudice.[7]

Gomez contends that inmates at Dalby Unit are charged sales tax on items purchased in the commissary, which violates BOP's internal procedures. Am. Compl. 8; Questionnaire 2. As relief, Gomez asks the Court to reimburse all taxes paid on items he has purchased at the commissary. Am. Compl. 10; Questionnaire 21. However, Gomez does not specify how his tax claim implicates the Constitution. *See* Am. Compl. 8; Questionnaire 2.

A plaintiff has no constitutional right to receive commissary items tax free, and cannot allege a viable civil-rights claim without an accompanying constitutional violation. *E.g,. Capers v. Dorthy*, No. 20-0213, 2020 WL 1482466, at *2–3 (W.D. La. Mar. 3, 2020) (recommending dismissal of prisoner's complaint that defendants charged him sales tax on commissary purchases due to the lack of a constitutional violation), *R. & R. adopted by* 2020 WL 1481550 (W.D. La. Mar. 23, 2020); *Goldsmith v. Strickland*, No. 3:14cv626–FKB, 2015 WL 5040008, at *4 (S.D. Miss. Aug. 26, 2015) ("[Plaintiff's] claim regarding payment of a sales tax by prisoners on items purchased at the commissary does not rise to the level of a constitutional violation."); *Hamil v. Scott*, No. 13-CV-0694-P, 2013 WL 2451051, at *6 (W.D. La. June 4, 2013) (dismissing as frivolous plaintiff's claim that prison lacked authorization to collect sales tax on commissary sales where he failed to demonstrate a constitutional violation); *Verrette v. Randolph*, No. 08-1200, 2009 WL 103715, at *9 (E.D. La. Jan. 14, 2009) ("[R]egardless of who operates the commissary, the collection of sales taxes simply does not violate plaintiff's rights."). Therefore, Gomez does

---

[7] As reflected in section II.D. below, federal law would require Gomez to pursue any constitutional claim for money damages against these Defendants under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Because Gomez's allegations in regard to the commissary taxes are constitutionally frivolous on their face, the Court chooses not to examine *Bivens* in this context. The Court does note, however, that the reasoning set forth in that section provides an additional basis for dismissing with prejudice claim one.

not state a constitutional violation when he pleads that "inmates are charged tax on items they purchase from the commissary . . . ." Questionnaire 2 (cleaned up).[8] Gomez has stated no constitution violation, and the Court should dismiss this claim.

**D. The Court must construe Gomez's remaining claims under *Bivens*. Because *Bivens* provides no viable avenue of relief under the circumstances presented herein, Gomez's claims should be dismissed with prejudice.**

As claims alleging constitutional violations that purportedly occurred during his incarceration as a federal prisoner, the Court construes Gomez's remaining allegations in accordance with 28 U.S.C. § 1331 and *Bivens*. *See Stephenson v. Reno*, 28 F.3d 26, 26 n.1 (5th Cir. 1994) (construing a federal prisoner's civil-rights complaint as an action brought under *Bivens*); *see also* ECF No. 2, at 2–3 (severing Gomez's conditions-of-confinement claims and characterizing them as *Bivens* claims). This conclusion is reinforced by the fact that none of the defendants named by Gomez—employees at a private facility operated on behalf of BOP, and the facility itself—are state actors. *See, e.g., Barnett v. GEO Grp., Inc.*, No. 1:15-CV-224-BL, 2017 WL 3896363, at *2 (N.D. Tex. Aug. 10, 2017) (explaining that employees of a private prison facility are not state actors), *R. & R. adopted by* 2017 WL 3887914 (N.D. Tex. Sept. 5, 2017); *Mayberry v. Aragor*, No. 3:11–CV–0333–K–BH, 2011 WL 4485775, at *2 (N.D. Tex. Sept. 6, 2011) ("Plaintiff fails to state a § 1983 claim against the defendants because they are all federal employees and officials and are not state actors acting under color of state law."), *R. & R. adopted by* 2011 WL 4485927 (N.D. Tex. Sept. 27, 2011).

---

[8] Any claim of "double taxation" would fail as well. *See, e.g., Capers*, 2020 WL 1482466, at *1–3 (dismissing for lack of constitutional violation plaintiff's allegation that because his family paid taxes to support prison, collecting sales taxes on commissary purchases amounted to "double taxes").

12

*Bivens* generally extends the remedies afforded under § 1983 to parties injured by federal actors.[9] *See Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999), *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d 939, 949–49 & n.36 (5th Cir. 2003) ("A *Bivens* action is analogous to an action under § 1983—the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials."). Since its decision in *Bivens*, however, the Supreme Court has significantly narrowed its holding. In *Correctional Services Corp. v. Malesko*, for example, the Supreme Court held that a prisoner could not bring a *Bivens* claim for monetary damages against a privately operated prison facility acting under color of federal law. 534 U.S. 61, 66 (2001). In *Minneci v. Pollard*, the Supreme Court further restricted *Bivens* by holding that a prisoner may not recover against individual employees of a privately operated prison where state tort law provides an adequate alternative remedy for the claimed constitutional violation. 565 U.S. 118, 125–31 (2012).

The Supreme Court has cautioned "that expanding the *Bivens* remedy is now a disfavored judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (internal quotation marks omitted). Specifically, the Supreme Court noted that, thus far, it has only implied *Bivens* claims for monetary damages under the Fourth (unreasonable search and seizure), Fifth (gender discrimination), and Eighth (Cruel and Unusual Punishment Clause) Amendments. *See id.* at 1854–55.

Moreover, a plaintiff cannot obtain non-monetary relief through a *Bivens* action. "[T]he decision in *Bivens* established that a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to

---

[9] Because a *Bivens* action is largely analogous to an action under § 1983, the Court does not distinguish between the two in its discussion herein. *See Izen v. Catalina*, 398 F.3d 363, 366–67 & n.3 (5th Cir. 2005).

13

obtain an award of monetary damages against the responsible federal official," but because "[i]njunctive or declaratory relief is useless to a person who has already been injured," a *Bivens* plaintiff may receive "damages or nothing." *Butz v. Economou*, 438 U.S. 478, 504–05 (1978) (internal quotation marks and citation omitted). Since deciding *Economou* in 1978, the Supreme Court has only approved *Bivens* relief in the form of monetary damages. *See, e.g.*, *Chappell v. Wallace*, 462 U.S. 296, 298, 305 (1983) (characterizing *Bivens* as a "suit for damages against federal officials" and declining to extend *Bivens* relief to a petition for damages, declaratory relief, and injunctive relief against superior military officers); *Carlson v. Green*, 446 U.S.14, 21–22 (1980) (confirming "punitive damages may be awarded in a *Bivens* suit"); *Malesko*, 534 U.S. at 63, 74 (stating that the Court has "never considered" a *Bivens* remedy to be the "proper vehicle for altering an entity's policy"); *Minneci*, 565 U.S. at 120 ("The question is whether we can imply the existence of an Eighth Amendment-based damages action (a *Bivens* action) against employees of a privately operated federal prison.").

Lower courts, including the Northern District of Texas, have followed suit. *See, e.g.*, *Berk v. Wiggins*, No. 3:18-CV-2301-X-BN, 2020 WL 6528937, at *3 (N.D. Tex. Oct. 6, 2020) ("To the extent that [plaintiff] seeks non-monetary relief . . . such relief is unavailable through this [*Bivens*] action . . . ."), *R. & R. adopted by* 2020 WL 6505017 (N.D. Tex. Nov. 5, 2020); *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities."); *see Gunter v. Wheeler*, No. A-17-CV-0136-RP, 2017 WL 3670017, at *3 (W.D. Tex. Aug. 23, 2017) ("[C]laims for declaratory and injunctive relief which, if granted, would result in the Court mandating official government action, are not cognizable in a *Bivens* action.").

14

Here, Gomez seeks only three[10] remaining forms of relief, none of which include claims for money damages—criminally investigating, charging, and prosecuting Dalby Unit officials for the conduct alleged in claims one through six of the Amended Complaint and their potential retaliation based on Gomez filing this suit. Am. Compl. 10; Questionnaire 21. Because Gomez does not seek monetary damages in relation to those claims, he cannot pursue a *Bivens* action against these federal actors, and the Court need not reach the question of whether such claims state viable constitutional violations under *Bivens*.

Alternatively, even assuming Gomez's allegations assert plausible constitutional violations, the fact that he seeks unauthorized relief, i.e., non-monetary damages, remains fatal to his claims. *Davis v. Passman*, 442 U.S. 228, 244 (1979) ("Although petitioner has a cause of action, her complaint might nevertheless be dismissed under Rule 12(b)(6) unless it can be determined that judicial relief is available."); *see also Garcia v. Jones*, 910 F.3d 188, 190 (5th Cir. 2018) (stating the Fifth Circuit reviews dismissals under § 1915 using "the same plausibility standard applicable to Federal Rule of Civil Procedure 12(b)(6) dismissals"). This is particularly true where, as here, the specific relief Gomez *does seek*, i.e., that the Court criminally charge, investigate, and prosecute the named Defendants, constitutes remedies unavailable to *any* civil rights plaintiff, *Bivens* or otherwise. Gomez possesses no constitutional right to have someone criminally prosecuted, and he cannot enforce criminal statutes through a civil request for relief. *See Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990) (stating that there is no "constitutional right to have someone criminally prosecuted"); *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 626 (N.D. Tex. 2007) ("Simply, a private citizen cannot enforce criminal statutes in a civil action."). Thus, the Court should dismiss Gomez's remaining claims for failure to seek appropriate relief.

---

[10] The Court has previously addressed Gomez's other two requests for relief, i.e., refunding commissary taxes and removing his immigration detainer.

As Gomez states no remaining claims for monetary damages available under *Bivens* and its progeny, nor relief available in any civil action, his Amended Complaint should be dismissed in its entirety.

### III. Recommendation

For these reasons, the undersigned recommends that the United States District Judge dismiss without prejudice Gomez's claims seeking removal of his immigration detainer or release from the Dalby Unit. The undersigned further recommends that the United States District Judge dismiss with prejudice Gomez's claim for monetary damages as it fails to state a constitutional violation, and dismiss with prejudice Gomez's remaining claims for seeking unavailable relief.

### IV. Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: December 7, 2021.

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE

17